IN THE UNITED STATES COURT FOR THE DISTRICT OF COLUMBIA

KRISTIA D. HAYES                                  :
4075 YUMA ROAD                                    :
ANDREWS AIR FORCE BASE                            :
MARYLAND 20762                                    :
                                                  :
        Plaintiff,                                :
                                                  :
v.                                                :        Civil Action No.
                                                  :
ELAINE CHAO, SECRETARY                            :
UNITED STATES DEPARTMENT                          :
OF TRANSPORTATION                                 :
1200 NEW JERSEY AVENUE, SE                        :
WASHINGTON, DC 20590                              :
                                                  :
        Defendant.                                :

## COMPLAINT

Plaintiff, Kristia D. Hayes, formerly Test and Evaluation Manager, Office of the Chief Information Officer, United States Department of Transportation, by and through her undersigned counsel, for her Complaint for employment discrimination and harassment based upon her race, color, gender, and disability, hereby states as follows:

## PARTIES

1.      Plaintiff, Kristia D. Hayes, was at all times relevant hereto an employee of the U.S. Department of Transportation (DOT) as a Test and Evaluation Manager at the Office of the Chief Information Officer.

2.      Defendant, the U.S. Department of Transportation, is a federal agency located in Washington, D.C.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., 42 U.S.C. § 2000(e) et. seq.

4.      At all times relevant to this case, Defendant has been an employer and has engaged in an industry affecting commerce, has employed fifteen or more employees, and otherwise has been an employer, within the meaning of 42 U.S.C. Sec 2000(b).

5.      Venue is vested in this Court, since the facts giving rise to this case took place in the District of Columbia.

### FACTS

6.      Plaintiff at all times relevant hereto was a federal employee who worked for the DOT since 2013 and has a total of 20 years of Federal Government service, including her active duty time served in the United States Air Force.

7.      Plaintiff is a Black female.

8.      Starting around 2013, as an employee of the Office of the Chief Information Officer, Plaintiff and other Black women experienced acts of discrimination and harassment based on race and gender. Co-workers commented on their appearance, they were treated as administrative support despite their professional experience and similar jobs and GS levels as co-workers, coworkers commented on their hair, and they were told by team members that another team member did not like Black women.

9.      Male co-workers discussed that Plaintiff was "pretty" and thus able to convince others to follow her lead.

10.     Plaintiff was frequently interrupted, degraded and humiliated at meetings and asked to do personal services such as purchasing doughnuts and obtaining supplies by male co-workers and managers.

11. Male co-workers and managers discussed Plaintiff's personal appearance and how desirable others thought she was.

12. During this time, Plaintiff spoke out about matters of race and gender at her employment.

13. In 2018 at DOT with the Destinations Digital Initiative, Plaintiff won an award for WFD Program.

14. In or about 2018, Plaintiff joined a new team at the DOT and began working as a Test and Evaluation Manager, Acting Enterprise Architect, Grade GS-14, Series 2210 at the Office of the Chief Information Officer, Enterprise Architecture Section.

15. In her position as Test and Evaluation Manager, Acting Enterprise Architect, Plaintiff analyzed applications and technologies, scheduled the meetings and compiled the agendas for the Enterprise Architect board meetings, maintained the Enterprise Architect artifacts, and maintained the SharePoint site.

16. Plaintiff was one of only two Black people on her team and the only Black female.

17. Plaintiff's First-Line Supervisor was Donald Buskard, Chief Enterprise Architect.

18. Donald Buskard is a white male.

19. Plaintiff's Second-Line Supervisor was Daniel Morgan, Chief Data Officer and Acting Chief Technology Officer.

20. Daniel Morgan is a white male.

21. In February 2019, Plaintiff underwent a surgery to correct an earlier surgery. During this time, Plaintiff was out on leave and telecommuting until April 2019 while recovering from the surgery.

22.     While telecommuting in February 2019, Plaintiff provided testimony by phone in her former supervisor Larry Slaughter's EEO complaint against Plaintiff's Second-Line Supervisor, Daniel Morgan. Plaintiff provided a statement and an affidavit confirming the race-based discrimination that she had witnessed against Mr. Slaughter by Mr. Morgan.

23.     Specifically, Plaintiff stated in the affidavit that her Second-Line Supervisor, Daniel Morgan, discriminated against African-Americans and that she had witnessed her management use Black employees against each other.

24.     When Plaintiff returned from telecommuting, her supervisor Donald Buskard asked her to backdate a performance appraisal. When Plaintiff expressed concern at that request, Buskard told her that "no one was trying to get her." Despite this assurance, however, Plaintiff was then given an appraisal that contained inaccuracies, an additional element, and statements that were contradictory throughout the assessment.

25.     That this appraisal came after Plaintiff's testimony supporting her co-worker's EOE complaint, in addition to her own testimony of management's harassment of Plaintiff herself, it is apparent that the appraisal's negative content was in retaliation for Plaintiff providing testimony to discriminatory actions as well as an act of further harassment.

26.     Subsequent to Plaintiff's Union filing a grievance about this performance appraisal, in September 2019, Plaintiff received a revised performance appraisal. This appraisal again contained inconsistencies, overlapping assignments and dates, as well as added job elements. Upon reporting this updated appraisal to EEO, Plaintiff was told she would receive a bonus and the wording would change, but in fact this did not happen.

27.     On September 17, 2019 Plaintiff's supervisor, Donald Buskard, asked Plaintiff to present items he created to the Enterprise Architect Board and to then send out a link after the

presentation. Upon asking for clarification and autonomy to work with the assignment, she was told to just "run with it."

28.    Despite the fact that Buskard told Plaintiff to "run with it," Buskard knew Plaintiff had limited experience with the program, never gave her full access to it, and never provided her with the link to share.

29.    The purpose and/or effect of this assignment was to establish Plaintiff's work as ineffectual and lackluster, to prove the negative appraisal was warranted, and to continue to harass and demean her as he had done over the years because of her race and gender.

30.    After this experience, Plaintiff complained to Buskard that she felt he did not respect her input and did not allow her to perform work at her grade level. In response, Buskard became angry with Plaintiff and stated that he does what he is told to do.

31.    On and around Oct. 4, 2019, Plaintiff initiated an EEO complaint against Buskard for discriminatory and harassing activity based on her race and gender.

32.    On or around October 10, 2019, Plaintiff sent Buskard an email requesting to telework Wednesdays, Thursdays and Fridays in order to accommodate her on-going medical appointments with health professionals.

33.    In that email, Plaintiff thanked him for allowing her to telecommute on Mondays, Wednesdays and Fridays which she had been doing beginning in late August 2019/early September 2019.

34.    On October 16, 2019, Buskard emailed Plaintiff that she could not telework three days in a row despite the fact that Plaintiff had done this at other times during her employment.

35.    As a result of Defendant's failure to provide reasonable accommodation of Plaintiff's health care needs, Plaintiff felt physically ill and suffered further emotional distress

including her physician's diagnosis of Post-Traumatic Stress Disorder, which was attributed to Defendant's on-going harassment of Plaintiff at her work environment. Furthermore, Defendant's actions caused Plaintiff to fear she would miss her appointments and that her health would continue to decline.

36.     Plaintiff replied asking Buskard to provide a rationale for denying her request to telework for three consecutive days and on October 18, 2019, Buskard replied approving her telework request for three months. This quick about-face is indicative of Defendant's discriminatory and harassing behavior toward Plaintiff.

37.     Defendant continued to harass and discriminate against Plaintiff, when on October 17, 2019 Buskard requested last minute changes to Plaintiff's previous assignment to include activities that were purely administrative, and that Plaintiff had not been asked to perform previously.

38.     Specifically, when Plaintiff requested the link from Buskard in order to email the Enterprise Architect Board, Buskard stalled for one week and then instead directed Plaintiff to update over 300 work products for the database using an ineffective and outdated industry tool, a google search. Other employees in Plaintiff's position, when asked by Plaintiff for advice, expressed shock at this request.

39.     Defendant's updated assignment to Plaintiff, which was overly administrative and impossible to complete in the remaining time allotted, caused Plaintiff to fear she was being set up to be downgraded and indicated further to Plaintiff that Buskard was using his power over her to harass and retaliate against her for her EEO activity and because of her race and gender.

40.     In a further act of harassment and discrimination, Defendant subjected Plaintiff to new and unwarranted timecard and telework scrutiny. On October 21, 2019, Buskard and Morgan

sent Plaintiff an email stating that she had incorrectly submitted her timecard and telework agreement, and on October 29, 2019, under the guise of reviewing her timecard for the updated telework agreement, Buskard emailed her stating that the number of months in her telework agreement was incorrect. In fact, as part of these actions Defendant gave Plaintiff incorrect instructions and also informed her that there were problems with her telework agreement even though it had been approved. Plaintiff asked for clarification but received none, nor was she given the opportunity to explain or clarify these issues.

41.    Defendant's sudden and intense scrutiny of Plaintiff's timecard and telework agreement was a new and surprising development for Plaintiff.  Many of the items referenced were not actual issues but simple administrative details that had no bearing on proper reporting. These actions, combined with others, furthered the climate of harassment and indicated to Plaintiff that Morgan and Buskard were, in fact, looking for reasons to terminate her employment due to her race and gender as well as her previous EEO activity.  Moreover, Defendant's overly zealous scrutiny of Plaintiff's timecards and telework requests evidenced its eagerness to hamper Plaintiff's request for reasonable accommodations relating to her health care.

42.    As a direct and proximate result of Defendant's harassment and discrimination, Plaintiff's mental health declined, her ability to concentrate continued to dissipate, she was made to believe she was being targeted, and she became even more frightened.

43.    On or around October 29, 2019, due to pressure Defendant brought to bear on Plaintiff through its many acts of discriminatory and harassing employment tactics and the ensuing effect on Plaintiff's physical and emotional health, Plaintiff submitted her resignation and was thus constructively discharged.

44.     On November 5, 2019, following the advice of Heather Albert, Lead Employee Liaison, Plaintiff requested to telework as a reasonable accommodation to her ongoing, deteriorating health issues brought on and exacerbated by Defendant's harassing and discriminatory actions. Despite obtaining the medical documentation in support of teleworking as a reasonable accommodation, Plaintiff was still required to interact with Buskard to the detriment of her mental and physical health.

45.     On November 6, 2019, while awaiting her employment end-date, Plaintiff informed Management that Buskard was continuing to harass her and that his behavior was negatively impacting her health conditions, including asthma, an autoimmune condition similar to lupus, and ongoing mental health issues.

46.     On November 12, 2019, Buskard approached Plaintiff at her desk, alone and unannounced, under the guise of signing her out-processing checklist, causing Plaintiff extreme mental distress.

47.     On November 27, 2019, Plaintiff made a complaint under the DOT Policy Framework for the Prevention of Harassment/OST Anti-Harassment Policy to the Volpe National Transportation Systems Center Office of Human Resources Employee Relations and Labor Relations Branch (Volpe ER) alleging harassment and bullying by her supervisor, Mr. Donald Buskard, Supervisory Information Technology Specialist (Enterprise Architecture), GS- 2210-15.

48.     In response, Volpe ER convened a fact-finding team to conduct an inquiry, gather additional facts, and develop findings regarding Ms. Hayes' allegations.

49.     This inquiry determined that there is sufficient evidence to find there were inappropriate comments made by Mr. Donald Buskard to Ms. Kristia Hayes on more than one

occasion. The evidence shows these comments were unwelcome, and as such rise to the level of harassing conduct under the OST Policy Framework.

50.     Despite Plaintiff's request to the contrary, Plaintiff was advised by DOT that the Agency could not prevent Buskard from contacting her.

51.     Defendant rejected all of Plaintiff's requests for reasonable accommodation: (1) to telework full time, as she requested on November 5, 2019, (2) to be transferred out of the Office of the Secretary of Transportation, as she requested on November 1, 2019, and (3) to be placed on administrative leave while the management harassment investigation was conducted.

52.     Due to Defendant's failure to accommodate Plaintiff's requests for reasonable accommodation of her health issues, Plaintiff's health continued to deteriorate.

53.     Fearing for her health, on November 18, 2019, Plaintiff submitted her second and final letter of resignation, to be effective November 29, 2019, and thus was constructively discharged.

54.     Upon information and belief, similarly situated white male employees receive better treatment by Defendant than Plaintiff, a Black female, received.

55.     As a direct and proximate result of Defendant's course of harassment and discrimination Plaintiff has been subjected to, Plaintiff has suffered emotional distress in the form of anxiety, for which she has begun taking prescription medications, as well as Post Traumatic Stress Disorder, which she received a diagnosis of during this time. She has additionally suffered physical harm due to increased frequency and intensity of asthma attacks and increased inflammation due to an autoimmune disease from which she suffers, causing severe pain when walking and typing and other effects in her joints and arms, as a direct and proximate result of Defendant's course of harassment and discrimination.

56.     Moreover, as a direct and proximate result of Defendant's course of harassment and discrimination Plaintiff has been subjected to, Plaintiff has lost wages due to her constructive discharge as well as future wages due to her PTSD, caused Defendant's actions, resulting in her inability to work for fear of harassment and discrimination in future employment.

57.     On or about September 19, 2019, Plaintiff initiated contact with EEO counselor and ultimately filed a formal charge of harassment and discrimination on or about October 27, 2019

58.     More than 180 days has passed since the filing of Plaintiff's initial charge.

COUNT I
VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

59.     Plaintiff hereby realleges all of the allegations contained in Paragraphs 1 - 58 of her Complaint.

60.     Defendant has subjected Plaintiff to unequal terms and conditions of employment and harassment due to her race, color, and gender, and has additionally failed to provide reasonable accommodation to Plaintiff regarding her medical condition and disability, all in violation of Title VII of the Civil Rights Act of 1964.

61.     Defendant has retaliated against Plaintiff for engaging in protected activity.

62.     Plaintiff has suffered and continues to suffer harm and damages as a direct and proximate result of Defendant's unlawful actions.

WHEREFORE, Plaintiff respectfully requests that Court:

A.     Enter Judgment in favor of Plaintiff on Count I and award Plaintiff damages, in an amount not less than $300,000.00 as well as such equitable relief as this Court deems necessary;

B.     Award Plaintiff all of his costs and expenses associated with this matter, including reasonable attorneys' fees; and

C.      Grant such other and further relief as this Court deems necessary based upon the facts and circumstances of this case.

Respectfully Submitted,

/s/Neil S. Hyman
Neil S. Hyman, Esquire
DC Bar No. 465047
Law Office of Neil S. Hyman, LLC
4520 East West Highway, Suite 700
Bethesda, Maryland 20814
301-841-7105 (p)
301-986-1301 (f)
neil@neilhymanlaw.com
*Counsel for Plaintiff*

## **JURY TRIAL**

Plaintiff requests that all matters in this case be tried by a jury.

Respectfully Submitted,

/s/Neil S. Hyman
Neil S. Hyman, Esquire
DC Bar No. 465047
Law Office of Neil S. Hyman, LLC
4520 East West Highway, Suite 700
Bethesda, Maryland 20814
301-841-7105 (p)
301-986-1301 (f)
neil@neilhymanlaw.com
*Counsel for Plaintiff*